UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SANDERS LAMAR ADAMS,

                Plaintiff,

         -against-

THE OFFICE OF THE DIRECTOR OF RISK
MANAGEMENT AT THE ZUCKER
HILLSIDE HOSPITAL AT THE LONG
ISLAND JEWISH MEDICAL CENTER,
THE OFFICE OF THE DIRECTOR OF RISK
MANAGEMENT AT THE CREEDMOOR
PSYCHIATRIC CENTER, GEORGETTE
LOZIER, KEVIN LYNCH, KATHY
IVERSON, ANITA KAMES LAROSA,
NANCY ABBINANTI, BRIDGET CLYBURN,
BRIAN WOODRUFF, LOLA OCCHIOGROSSO,
LORAINE HINSON SPEARMEN, THE
DIRECTOR OF THE OFFICE OF DISCHARGE
PLANNING AT THE CREEDMOOR
PSYCHIATRIC CENTER, DR. BON C. COO,
MARK RUSS, CHANTAL WEINHOLD,
CHIEF FELTON, AND DR. LESLIE ANTOINE,

                Defendant.
-----------------------------------------------------------X



**BLOOM, United States Magistrate Judge:**

      Plaintiff, Sanders Lamar Adams, files this *pro se* case under 42 U.S.C. § 1983

challenging his involuntary hospitalization and medication at Zucker Hillside Hospital and

Creedmoor Psychiatric Center. Defendants move for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure.[1] The Honorable Dora L. Irizarry referred defendants'

motions to me for a Report and Recommendation pursuant to 28 U.S.C. §636(b). For the

following reasons, it is respectfully recommended that defendants Kathy Iverson's and Brian

Woodruff's motions for summary judgment should be granted and defendants the Office of the

---

[1] Defendants provided plaintiff with the requisite Local Civil Rule 56.2 Notice to Pro Se Litigant Who Opposes a
Summary Judgment. <u>See</u> docket entries # 85, 101, and 109.



1

Director of Risk Management at the Zucker Hillside Hospital, Mark Russ, Lola Occhiogrosso, Chantal Weinhold, Bridget Clyburn, Nancy Abbinati, and Georgette Lozier's (the "Zucker defendants") motion for summary judgment should be granted in part and denied in part. I also recommend that the Court, after providing plaintiff with notice and 30 days to respond, should consider granting the Zucker defendants summary judgment independent of their motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure for the reasons stated herein.

## BACKGROUND

### Creedmoor Psychiatric Center

In 1993, plaintiff began serving a 15-year sentence for assault and robbery. On January 4, 2007, plaintiff was transferred to the Central New York Psychiatric Center ("CNYPC") for "unpredictable and bizarre behaviors, with religious preoccupation and disorganized thought process." Antoine Decl. at Ex. A at OMH 28, Docket entry # 107. CNYPC is "maximum security inpatient facility" that provides "care and treatment to persons incarcerated in the New York State and county correctional system."[2]

Prior to the completion of his prison term, CNYPC staff examined plaintiff and found he still required care and treatment in a hospital. Antoine Decl. at Ex. B. On the last day of his prison term, plaintiff was transferred from CNYPC to Creedmoor Psychiatric Center ("CPC"). Id. at Ex. E at OMH 392 (stating plaintiff was "tranf[erred] from CNYPC … as he maxed out of 15 years of continuous incar[ceration]"). Pursuant to Section 9.27 of the New York Mental Hygiene Law, plaintiff was involuntarily committed to CPC on the grounds that he suffered "a serious psychiatric condition" that "required treatment and care in a hospital." Id. ¶ 9.

As required under Section 9.27, CPC staff gave plaintiff written notice of his involuntary commitment, his right to request a hearing to challenge his hospitalization, and CPC's authority

---

[2] http://www.omh.state.ny.us/omhweb/facilities/cnpc/facility.htm (last visited on May 2, 2011)

to keep plaintiff for up to 60 days from his April 25, 2007 date of his admission. Id. ¶ 10. Plaintiff successfully challenged his confinement at CPC. On June 6, 2007, CPC discharged plaintiff to Stepping Stones, a CPC-run transitional residence. Id. ¶ 11-15.

Zucker Hillside Hospital and Brian Woodruff

On July 21, 2008, Stepping Stones staff called the police "stating that [plaintiff] had been noncompliant with his medications and decompensated, becoming increasingly delusional and verbally abusive." Docket entry # 101-5 at 36. Plaintiff was taken to the emergency room at Queens Hospital Center ("QHC") and QHC physicians evaluated plaintiff and found him in need of "psychiatric hospitalization." Id. The following day, plaintiff was transferred to Zucker Hillside Hospital ("Zucker"). See Zucker Hillside Ex. D (transfer summary noting plaintiff was transferred because "HHC bed unavailable").[3] Acting under New York Mental Hygiene Law § 9.27, Zucker admitted and retained plaintiff for treatment. Docket entry # 101-5 at 35. Plaintiff's involuntary commitment to Zucker was made based on an application by a QHC employee that was accompanied by certifications by two QHC physicians and a confirmation that plaintiff required involuntary care by Adam Lau, a Zucker physician who is not a defendant herein. Docket entry # 105-1 at 19-21.

A week later, plaintiff became agitated and aggressive and threatened to kill staff members at Zucker. Docket entry 105-1 at 87; 147. Plaintiff was restrained and defendant Brian Woodruff, R.N., injected plaintiff with medication. Id.; Compl. at 6-7, 34 n.8.[4] Following that incident, plaintiff refused to take his prescribed medication. Zucker staff, including defendants Mark Russ, M.D., and Lola Occhiogrosso, M.D., applied for court-permission to involuntarily

---

[3] Zucker did not electronically file plaintiff's entire medical record but submitted an unpaginated courtesy copy to my chambers. The transfer summary referenced by the Court in this footnote appears 33 pages from the end of Zucker's Exhibit D. However, the Court could not locate the electronic version of this document in the duplicate copy of plaintiff's medical records submitted by defendant Woodruff, see docket entries # 101-5, 101-6, 101-7. To make the record complete while preserving plaintiff's privacy, the Clerk of Court is directed to file Zucker's Exhibit D and docket entries # 101-5, 101-6, and 101-7, under seal for parties' eyes only.

[4] The Court uses the ECF page numbers for ease of reference.

medicate plaintiff. Docket entry # 105-1 at 29-39. The Hon. Allen B. Weiss granted Zucker's request. Docket entry # 86 at 57-9.

Instant Lawsuit

Plaintiff filed the instant lawsuit against forty-four defendants pursuant to 42 U.S.C. § 1983 challenging his involuntary hospitalization and treatment as well as raising other constitutional claims. The Court dismissed plaintiff's complaint against twenty-seven defendants for improper venue and failure to state a claim, but permitted plaintiff's allegations challenging his involuntary hospitalization and medication at CPC and Zucker to proceed. Docket entry # 4 at 12. The parties conducted discovery. By letter dated October 28, 2010, plaintiff voluntarily withdrew "all of [his] claims against the state defendants remaining in the complaint with the exception of Kathleen Iverson." Docket entry # 95. Plaintiff testified at his deposition that his only claims against Kathy Iverson were for involuntary hospitalization and denial of "fresh air and exercise." Tr. of Pl.'s Dep. 16:9-13, Docket entry # 108-3.

Defendants move for summary judgment. Plaintiff has not opposed the motions.[5]

STANDARD

Summary judgment should be granted where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

---

[5] When plaintiff failed to oppose the defendants' motions by the scheduled date, the Court *sua sponte* granted plaintiff additional time to file his opposition. Docket entry # 111. Despite the extension, plaintiff did not file any opposition.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendants' motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

The non-moving party must provide "affirmative evidence," from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257; Fed. R. Civ. P. 56(c). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted)).

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d

Cir. 2001). Defendants submitted a statement of undisputed facts pursuant to Local Rule 56.1(a). Even though plaintiff failed to file a Rule 56.1 statement, the Court "must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court reviews the entire record and deems admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

## DISCUSSION

I.      Kathy Iverson

As noted above, plaintiff only sues Kathy Iverson for involuntary hospitalization and denial of "fresh air and exercise." Tr. of Pl.'s Dep. 16:9-13, Docket entry # 108-3.[6] Iverson is the Executive Director of Creedmoor Psychiatric Center. Iverson Decl. ¶ 6, Docket entry # 106. Iverson moves for summary judgment on the grounds that plaintiff provides no evidence that his constitutional rights were violated or that she was personally involved in any deprivation of his rights. Iverson also asserts she is entitled to Eleventh Amendment immunity for plaintiff's damages claims against her in her official capacity and to qualified immunity for plaintiff's damages claims against her in her individual capacity.

A. Violation of Constitutional Rights

Plaintiff alleges defendants violated his rights by failing to provide him with "the due process rights hearings prior to transfer, and prior to the administration of psychotic drugs, and hospitalization." Compl. at 19. Iverson moves for summary judgment on the grounds that CPC followed the strict procedural requirements of New York Mental Hygiene Law § 9.27, which the Second Circuit has held is facially sufficient to meet due process requirements. Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983).

---

[6] The Court dismissed plaintiff's claims against Iverson for denial of fresh air and exercise and only permitted plaintiff's claims for involuntary hospitalization and medication to proceed. Docket entry # 4 at 12.

This section of the New York Mental Hygiene Law requires that an application to admit and retain a patient alleged to be mentally ill be must based on the certificates of two examining physicians, include a confirmation by a third physician who finds that the patient satisfies the criteria for hospitalization, and coincide with patient notification of his or her involuntary commitment status and rights, including the right to counsel and a post-deprivation hearing to challenge the confinement. N.Y. Mental Hyg. Law §§ 9.27, 9.29. The Second Circuit has held that due process also requires that the "committing physician['s] ... judgment be exercised on the basis of substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community." Rodriguez v. City of New York, 72 F.3d 1051, 1063 (2d Cir. 1995).

As it is undisputed that CPC complied with Section 9.27 and plaintiff provides no evidence that he was committed "on criteria ... substantially below the standards generally accepted in the medical community," id., plaintiff's constitutional challenge to his confinement under Section 9.27 of the Mental Hygiene Law cannot withstand defendants' motion for summary judgment. See e.g., Meadows v. City of New York, No. 10-CV-286, 2011 WL 864832, at * 6 (E.D.N.Y. Mar. 11, 2011) (Gleeson, J.) (denying facial challenge); Balkum v. Sawyer, No. 09-CV-289, 2010 WL 3927817, at * 4 (N.D.N.Y. Oct. 4, 2010) (McCurn, J.) (denying as-applied challenge).[7] As such, defendant Iverson's motion for summary judgment should be granted. Kraft v. City of New York, 696 F. Supp. 2d 403, 415 (S.D.N.Y. 2010)

---

[7] Plaintiff's complaint could be liberally construed to allege two alternative challenges to his civil commitment. To the extent he challenges the length of his retention, this claim is without merit as (1) plaintiff was released from CPC prior to the 60-day retention period authorized by N.Y. Mental Hygiene Law §§ 9.27, 9.31 and (2) plaintiff was discharged to transitional housing prior to the deadline set at plaintiff's hearing. Antoine Decl. ¶ 15 and Ex. D. To the extent plaintiff alleges CNYPC and CPC should have applied for his institutionalization pursuant to the procedurally more restrictive N.Y. Correct. Law § 402, which requires a pre-deprivation hearing, this claim is also without merit. "An inmate committed to a psychiatric facility who is nearing the end of a term of imprisonment, may on application by the director of the hospital, be admitted to the care of OMH pursuant to [Article 9 or 10 of] the Mental Hygiene Law. " State ex rel Harkavy v. Consilvio, 7 N.Y.3d 607, 613 (2006); N.Y. Correct. Law § 404.

(granting summary judgment where record revealed defendant doctors complied with N.Y. Mental Hygiene Law).

### B. Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). "Personal involvement of a supervisory official may be established by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." Id. (internal quotation marks omitted).[8]

As Executive Director of CPC, Iverson is responsible for overseeing the "day-today operation and management of the hospital." Iverson Decl. ¶ 4. Iverson also "determine[s] the policy and resource allocations for the hospital," "develop[s] plans for the type and level of patient care that will be implemented by the hospital," "provide[s] overall oversight and governance of all hospital programs and services," "directly supervise[s] the senior managers or

---

[8] There is disagreement as to whether Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009) eliminated all but the first and third methods of proving personal involvement. Cf McNair v. Kirby Forensic Psych. Ctr., No 09-CV-6660, 2010 WL 4446772, at * 6 (S.D.N.Y. Nov. 5, 2010) (Scheindlin, J.) (only the first and third methods survive Iqbal); accord Warrender v. U.S., No. 09-CV-2697, 2011 WL 703927, at * 5 n.1 (E.D.N.Y. Feb. 17, 2011) (Matsumoto, J.) with Sash v. U.S., 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (because Iqbal involved intentional discrimination, it did not abrogate Colon for constitutional claims that do not require showing of discriminatory intent). The Court need not opine on this issue; even assuming all methods are available to plaintiff, there is no evidence that Iverson was personally involved in the constitutional violations plaintiff alleges.

cabinet of the hospital," and "serve[s] as appointing authority for the employees being hired at CPC." Id. In contrast, "the day-to-day operation of each of the departments and divisions within the hospital is the direct responsibility of and overseen by the head of that particular department and division. " Id. Iverson is not a physician and does "not participate directly in the treatment and care of patients or have involvement in the clinical determinations to retain or discharge patients." Id. ¶ 6. More specifically, she did not participate in plaintiff's treatment, care, or the "clinical determinations and process to involuntarily retain him at CPC." Id.

Plaintiff does not oppose Iverson's assertions and there is no evidence in the record that contradicts these statements. As there is no evidence that Iverson was personally involved in the constitutional violations plaintiff alleges, Iverson's motion for summary judgment should be granted. See generally, Fisk v. Letterman, 401 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (dismissing Section 1983 claim because "none of the facts ... tend to show that [the state official] was in any way connected to the commitment of plaintiff").

C. Immunity

Iverson also argues that she is entitled to absolute immunity for those acts conducted in her official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Eleventh Amendment's bar on suits against States extends to state agencies, departments, and officials sued for damages in their official capacity. Bellamy v. Mount Vernon Hosp., No. 07-CV-1801, 2009 WL 1835939, at * 4 (S.D.N.Y. June 26, 2009) (Scheindlin, J.). It is well-settled that where a plaintiff seeks damages under Section 1983 from a defendant in his or her official capacity, "dismissal under the eleventh amendment [is] proper because a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred."

9

Berman Enter. Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993). Therefore, Iverson's motion for summary judgment on plaintiff's Section 1983 claim for damages against her in her official capacity should be granted.[9]

      II.     Zucker Hillside Hospital Defendants

           A.  State Action

In order to prevail on Section 1983 claim, plaintiff must prove that the Zucker defendants acted "under color of any statute, ordinance, regulation or custom or usage of any State" to deprive him of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. See generally Hollander v. Copacabana Nightclub, 624 F.3d 30, 33 (2d Cir. 2010). The Zucker defendants move for summary judgment on the grounds that as a private hospital, they are, by definition, not state actors. However, a private entity is considered a state actor for Section 1983 purposes when:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

Sybalski v. Ind. Group Home Living Program, 546 F.3d 255, 257 (2d Cir. 2008) (internal citation omitted). Generally, a private hospital that civilly commits someone against his or her will is not considered to be a state actor. See Okunieff v. Rosenberg, 996 F. Supp. 343 (S.D.N.Y. 1998), aff'd at 166 F.3d 507 (2d Cir. 1999). In such cases, state action is absent because the responsible physician's determination "ultimately turns on [his or her private]

---

[9] Iverson also argues she is entitled to qualified immunity. "Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (internal citation and quotation marks omitted). As the Court finds that plaintiff does not establish that Iverson violated his constitutional rights, the Court need not reach the issue of qualified immunity. See Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) (If a government official's conduct violates no constitutional right, "there is no necessity for further inquiries concerning qualified immunity.").

medical judgments made … according to professional standards." Blum v. Yaretsky, 457 U.S. 991, 1008 (1982). However, when a private physician's or facility's decision is based on a state actor's opinion rather than his or her medical judgment, there is a "sufficiently close nexus between the State and the challenged action of defendant so that the action may be fairly treated as that of the State itself." Tewksbury v. Dowling, 169 F. Supp. 2d 103, 109-110 (E.D.N.Y. 2001) (internal citation omitted). See also Nedd v. Queens Hosp. Ctr., No 08-CV-1141, 2008 WL 2497428, at * 2 (E.D.N.Y. June 18, 2008) (Irizarry, J.) (noting Zucker Hillside Hospital employees who involuntarily committed plaintiff could be considered to be state actors under certain factual circumstances).[10]

### 1. Involuntary Hospitalization

At least two decisions by this Court have found a private hospital's decision to involuntary commit a patient to be state action. In Tewkbury v. Dowling, the Court found that a private hospital was a state actor for purposes of Section 1983 when it agreed to accept the transfer of the patient upon a call from a state employee and without independent medical examination until the following day. Tewkbury, 169 F. Supp. 2d at 110. This holding relied on another case Kudla v. Queens Hosp. Ctr., No. 94-CV-4426 (E.D.N.Y. Mar. 31, 1998) (Amon, J.), which found state action where two of the four individuals involved in the private hospital's Section 9.27 involuntary commitment application "were unquestionably state actors." Id. at 111. See also Ruhlmann v. Ulster County Dept. of Soc. Servs., 234 F. Supp. 2d 140 (N.D.N.Y.) (genuine issue of material fact existed as to amount state officials' opinions influenced private defendant's decision to involuntarily hospitalize plaintiff).

---

[10] The Court does not credit defendants' argument that plaintiff's description of Zucker Hillside Hospital as a private hospital or the Court's use of the term "private" to distinguish the defendants in a scheduling order is dispositive of the issue or informs the legal analysis here. Neither a scheduling order nor a *pro se* plaintiff's description of a claim determines the applicable precedent. Defendants also misconstrue the holding of Nedd, 2008 WL 2498428, at * 2, which held that Zucker Hillside can be a state actor under certain circumstances, not that it always is a private actor.

In this case, Zucker also committed plaintiff pursuant to Section 9.27 of the Mental Hygiene law. As noted above, this section requires a hospital director to apply for the involuntary admission of a patient, two physicians to certify the patient is mentally ill and in need of involuntary care and treatment, and a third physician, who is a staff member at the admitting hospital, to confirm that plaintiff meets the requirements for hospitalization. In plaintiff's case, three of these four individuals appear to be QHC employees, see docket entry # 105-1 at 19-21 (applicant for admission and two certifying physicians list a QHC address), and would accordingly be state actors. See Nedd, 2008 WL 2498428, at * 2 ("Queens Hospital Center is a public hospital and its employees would be considered state actors."). Plaintiff's medical records reflect that plaintiff was nonresponsive to examiners' questions and Zucker staff relied on the state actors' opinion, namely statements from QHC and CPC staff that plaintiff "had been non-compliant with medications and had been getting into more frequent verbal arguments with staff members" at Stepping Stones. Docket entry # 101-5 at 75.[11] Based on the instant record, the Court cannot conclude that Zucker's decision to commit plaintiff was not state action. As such, the Zucker defendants' motion for summary judgment on the basis that it was not a state actor should be denied as to plaintiff's involuntary commitment claims.

## 2. Involuntary Medication

A week after his involuntary admission, plaintiff threatened to kill Zucker staff and exhibited increased agitation and aggression. As a result, "plaintiff required the administration of medication on an emergency basis," docket entry # 101-5 at 36, and defendant Woodruff injected plaintiff with antipsychotic medication, Compl. at 6-7. In subsequent days, plaintiff

---

[11] It was entirely reasonable for defendants here to rely on plaintiff's medical history when he did not respond to questions at his examination. Nonetheless, on the narrow grounds of state action, as opposed to an argument that the Zucker defendants complied with Section 9.27 or that the individual defendants were not personally involved in his commitment, the Court finds that the submitted medical records coupled with the identity of the individuals involved in the Section 9.27 application raise an issue of fact as to whether defendants' actions could be state action.

refused the medication and the Zucker defendants sought and obtained a court order to medicate him. Docket entry # 101-5 at 29-39. There is nothing in the record to reflect that these decisions and actions were taken with the input, influence, or coordination of the state; rather they were the independent medical judgments of private individuals. Therefore, Zucker Hillside Hospital defendants' motion for summary judgment on plaintiff's claims challenging his involuntary medication should be granted.

### 3. Other Constitutional Violations

To the extent plaintiff's complaint could be liberally construed to allege other constitutional violations and that the conditions of his commitment at Zucker violated his constitutional rights, the Court should grant Zucker's motion for summary judgment on these claims as plaintiff has failed to demonstrate state action. [12] There is no evidence that any of the terms, conditions, or events of his confinement were controlled, intertwined with, or delegated by the state.

### B. Absolute Immunity

The Zucker defendants argue that "because [they] acted in strict accord with the directives of an order of Judge Weiss," they "should be entitled to the immunity enjoyed by Judge Weiss." Absolute immunity is reserved to judges and other individuals because "a historical or common law basis exists for immunity from suit arising out of performance of [their] function[s]." Mangiafico v. Blumenthal, 471 F.3d 391, 395 (2d Cir. 2006). Litigants who follow the orders of judges are not entitled to judicial or absolute immunity. Therefore, the Zucker defendants' motion based on absolute immunity should be denied.

---

[12] Plaintiff sues Zucker's Office of Risk Management for failing to provide plaintiff with a grievance procedure and for hanging up on plaintiff, Compl. at 5, 7; and Zucker employees Mark Russ and Lola Occhiogrosso for involuntarily medicating him and for injecting him in violation of his Muslim beliefs, id. at 6-7, 25,6, 33-5; Chantal Weinhold for depriving him of personal property and requiring him to attend substance abuse programs that endorse religion, id. at 32, 24; Bridget Clyburn for the lack of storage space for his property, id. at 7-9; Nancy Abbinanti and Georgette Lozier for losing his property, failing to act on his complaint regarding the lost property, and excessive force in injecting him with medication, id. at 6-7,9.

## C. Res Judicata

Under the doctrine of res judicata "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999). The "burden is on the party seeking to invoke res judicata to prove the doctrine bars the second action. Computer Assocs., Intern, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997). "[U]nder New York law, the form of relief being sought is an element of the litigant's claim." Leather, 180 F.3d at 424. Plaintiff seeks relief in the form of damages for violations of his constitutional rights. Compl. at 37. Because he could not have sought this relief in a hearing challenging his confinement or medication, this claim is not barred by res judicata. Id.; Harvey v. Sawyer, No. 09-CV-598, 2010 WL 3323665, at * 4 (N.D.N.Y. July 22, 2010) (Homer, M.J.) (res judicata is inapplicable to Section 1983 claim for damages brought after involuntary commitment hearing). See also Davidson v. Capuano, 792 F.2d 275, 279-80 (2d Cir. 1986) (res judicata does not bar a Section 1983 claim for damages, because such damages were not available in Article 78 proceeding challenging the same operative facts).

### III.    Judgment Independent of Zucker Defendants' Motion

The record submitted on the instant motion does not reflect that the named Zucker defendants were personally involved in plaintiff's involuntary commitment[13] or failed to comply with the due process requirements, *see supra* at 7, for civil commitment. Although defendants did not move on these grounds, the Court may "after giving notice and reasonable time to respond ... grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f). I recommend that plaintiff be granted 30 days to submit evidence that these defendants were personally involved in his involuntary commitment and violated his constitutional rights when

---

[13] Plaintiff does not sue Adam Lau, the only Zucker employee who is named in the Section 9.27 application for plaintiff's admission.

they involuntarily committed him. Plaintiff is advised that under Rule 56, he must submit sufficient evidence to oppose the proposed summary judgment. Fed. R. Civ. P. 56(c).[14]

    IV.    Brian Woodruff

    Brian Woodruff was the nurse on duty at Zucker Hillside Hospital who gave plaintiff an intramuscular injection of medication. Compl. at 6-7; 34. Woodruff argues he is entitled to summary judgment because he is not a state actor. At all relevant times, Woodruff was employed by Cross Country TravCorps, Inc., a private company that provides temporary health care staffing to medical facilities. Woodruff Aff. ¶ 6, Docket entry # 101-10; Maslic Aff. ¶¶ 3, 7-9, Docket entry # 101-9. "A private entity does not become a state actor merely by performing under a state contract." Elufe v. Lyons, No. 10-CV-2638, 2010 WL 2606649, at * 2 (E.D.N.Y. June 18, 2010) (Matsumoto, J.) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)). In applying the requisite "fact-specific inquiry," the Court finds that Woodruff, in carrying out orders by staff at Zucker, did not engage in a public function, under state compulsion, or in a joint undertaking with the state. Logan v. Bennington College Corp., 72 F.3d 1017, 1027 (2d Cir. 1995). As such, Woodruff's motion for summary judgment should be granted.

---

[14] The Court attaches a copy of the Local Rule 56.2 notice to this Report for plaintiff's benefit. Rule 56 of the Federal Rules of Civil Procedure was amended in December 2010 and an amendment to Local Rule 56.2 notice has been proposed, but has not yet been adopted. Therefore, the Local Rule 56.2 notice refers to Fed. R. Civ. Pro. 56(e); this section is now Fed. R. Civ. Pro. 56(c) in the amended rule. Additionally, the Local Rule 56.2 notice reads "defendant ... has moved;" as discussed *supra*, the Court recommends that summary judgment should be considered independent of defendants' motion, on the grounds that plaintiff cannot establish the Zucker defendants were personally involved in or violated his constitutional rights in civilly committing him.

I respectfully recommend that the Kathleen Iverson's and Brian Woodruff's motions for summary judgment should be granted. I also recommend that the Zucker defendants' motion for summary judgment should be granted, except as to plaintiff's claim regarding his involuntary commitment. Finally, I recommend that, after providing plaintiff with notice and 30 days to respond, the Court should consider granting summary judgment to Zucker defendants independent of their motion, pursuant to Fed. R. Civ. P. 56(f) on the grounds that the named Zucker defendants were not personally involved in his involuntary commitment and did not violate his constitutional rights when they involuntarily hospitalized him.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).


                                        LOIS BLOOM
Dated: May 11, 2011                     United States Magistrate Judge
Brooklyn, New York


                                        16

## Notice to Pro Se Litigant Opposing Motion for Summary Judgment

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits or other papers as required by Rule 56(e) of the Federal Rules of Civil Procedure and by Local Rule 56.1. An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. The full text of Rule 56 and Local Civil Rule 56.1 is attached.

In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising material issues of fact for trial. Any witness statements must be in the form of affidavits. You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment.

If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

If plaintiff has any questions or seeks information on how to oppose a motion, plaintiff may call the Pro Se Office at (718) 613-2665.

the non-existence
taxable.

dels, Photograph
otographs, 8″×
or received in ev
8″ × 10″ are not

Costs of map
ter generated m
of court. The co
al comparisons an

id Related Cost
s and other relate
not taxable except

Receivers, Comm
's. Fees of master
urt appointed exp
herwise ordered

arches. A party
ements for the
insurance, abstra
ny public officer
and certify to the
g the cost of sim

iscellaneous Fees
l actual fees of the
d process server
ed by the court
Civil Rules 11, 12
nber 1, 2009.]

ECURITY FOR
m or on its own
e an original bon
costs in such an
designate. For fai
court may make
iance as are just
an order striking
oceedings until the
ion or rendering
n-complying party
al Civil Rule 39.]

TERING SATIS
NEY JUDGMEN
oney judgment reco
t shall be entered

nent into the cou
, and the payment
any;

---

upon the filing of a satisfaction executed and
ledged by: (1) the judgment creditor; or (2)
gment creditor's legal representatives or as-
with evidence of their authority; or (3) the
creditor's attorney if within ten (10) years of
y of the judgment or decree;

the judgment creditor is the United States,
filing of a satisfaction executed by the Unit-
Attorney;

rsuant to an order of satisfaction entered by
or

upon the registration of a certified copy of a
on entered in another district.

[Former Local Civil Rule 13.]

## 55.1 CERTIFICATE OF DEFAULT

applying for a certificate of default by the
rsuant to Federal Rule of Civil Procedure
submit an affidavit showing (1) that the
against whom a notation of default is sought is
infant, in the military, or an incompetent
(2) that the party has failed to plead or
defend the action; and (3) that the pleading
no response has been made was properly

[Former Local Civil Rule 10(a).]

## RULE 55.2 DEFAULT JUDGMENT

the Clerk. Upon issuance of a clerk's cer-
of default, if the claim to which no response
made only sought payment of a sum certain,
not include a request for attorney's fees or
stantive relief, and if a default judgment is
against all remaining parties to the action, the
party may request the clerk to enter a default
by submitting an affidavit showing the prin-
amount due and owing, not exceeding the
sought in the claim to which no response has
made, plus interest, if any, computed by the
credit for all payments received to date
forth, and costs, if any, pursuant to 28

the Court. In all other cases the party
judgment by default shall apply to the court
in Federal Rule of Civil Procedure
shall append to the application (1) the
ate of default, (2) a copy of the claim to
sponse has been made, and (3) a proposed
judgment.

[Former Local Civil Rule 10.]

---

## RULE 56.1 STATEMENTS OF MATERIAL FACTS ON MOTION FOR SUMMARY JUDGMENT

(a) Upon any motion for summary judgment pursu-
ant to Rule 56 of the Federal Rules of Civil Proce-
dure, there shall be annexed to the notice of motion a
separate, short and concise statement, in numbered
paragraphs, of the material facts as to which the
moving party contends there is no genuine issue to be
tried. Failure to submit such a statement may consti-
tute grounds for denial of the motion.

(b) The papers opposing a motion for summary
judgment shall include a correspondingly numbered
paragraph responding to each numbered paragraph in
the statement of the moving party, and if necessary,
additional paragraphs containing a separate, short and
concise statement of additional material facts as to
which it is contended that there exists a genuine issue
to be tried.

(c) Each numbered paragraph in the statement of
material facts set forth in the statement required to
be served by the moving party will be deemed to be
admitted for purposes of the motion unless specifically
controverted by a correspondingly numbered para-
graph in the statement required to be served by the
opposing party.

(d) Each statement by the movant or opponent
pursuant to Rule 56.1(a) and (b), including each state-
ment controverting any statement of material fact,
must be followed by citation to evidence which would
be admissible, set forth as required by Federal Rule
of Civil Procedure 56(e).

[Source: Former Local Civil Rule 3(g).]

[Adopted March 25, 2004.]

## RULE 56.2 NOTICE TO PRO SE LITIGANT WHO OPPOSES A SUMMARY JUDGMENT

Any represented party moving for summary judg-
ment against a party proceeding pro se shall serve
and file as a separate document, together with the
papers in support of the motion, a "Notice To Pro Se
Litigant Who Opposes a Motion For Summary Judg-
ment" in the form indicated below. Where the pro se
party is not the plaintiff, the movant shall amend the
form notice as necessary to reflect that fact.

### Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment

The defendant in this case has moved for summary
judgment pursuant to Rule 56 of the Federal Rules of
Civil Procedure. This means that the defendant has
asked the court to decide this case without a trial,
based on written materials, including affidavits, sub-
mitted in support of the motion. THE CLAIMS YOU

➜ **Rule 56. Summary Judgment**

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) **Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) **Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

(h) **Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

CREDIT(S)

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 28, 2010, effective December 1, 2010.)

ADVISORY COMMITTEE NOTES

1937 Adoption

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment

procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment (1929)*, 38 Yale L.J. 423.

**Note to Subdivision (d).** See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the Note thereto.

**Note to Subdivisions (e) and (f).** These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

1946 Amendment

**Note to Subdivision (a).** The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco*, N.D.Cal.1944, 58 F.Supp. 25, the plaintiff's counationermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States v. Adler's Creamery, Inc.*, C.C.A.2, 1939, 107 F.2d 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself makes a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

**Subdivision (c).** The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor v. Arkansas Natural Gas Corp.*, 1944, 64 S.Ct. 724, 321 U.S. 620, 88 L.Ed. 967. See also Commentary, Summary Judgment as to Damages, 1944, 7 Fed.Rules Serv. 974; *Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co.*, C.C.A.2d, 1945, 147 F.2d 399, certiorari denied 1945, 65 S.Ct. 1201, 325 U.S. 861, 89 L.Ed. 1982. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

**Subdivision (d).** Rule 54(a) defines "judgment" as including a decree and "any order from which an appeal lies." Subdivision (d) of Rule 56 indicates clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co.*, C.C.A.7, 1942, 130 F.2d 535; *Biggins v. Oltmer Iron Works*, C.C.A.7, 1946, 154 F.2d 214; 3 *Moore's Federal Practice*, 1938, 3190-3192. Since interlocutory appeals are not allowed, except where specifically provided by statute, see 3 Moore, op. cit. supra, 3155-3156, this interpretation is in line with that policy, *Leonard v. Socony-Vacuum Oil Co.*, supra. See also *Audi Vision Inc. v. RCA Mfg. Co.*, C.C.A.2, 1943, 136 F.2d 621; *Toomey v. Toomey*, 1945, 149 F.2d 19, 80 U.S.App.D.C. 77; *Biggins v. Oltmer Iron Works*, supra; *Catlin v. United States*, 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911.

1963 Amendment

**Subdivision (c).** By the amendment "answers to interrogatories" are included among the materials which may be considered on motion for summary judgment. The phrase was inadvertently omitted from the rule, see 3 Barron & Holtzoff, *Federal Practice & Procedure* 159-60 (Wright ed. 1958), and the courts have generally reached by interpretation the result which will hereafter be required by the text of the amended rule. See Annot., 74 A.L.R.2d 984 (1960).

**Subdivision (e).** The words "answers to interrogatories" are added in the third sentence of this subdivision to conform to the amendment of subdivision (c).

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not suppositious, conclusory, or ultimate. See *Frederick Hart & Co., Inc. v. Recordgraph Corp.*, 169 F.2d 580 (3d Cir. 1948); *United States ex rel. Kolton v. Halpern*, 260 F.2d 590 (3d Cir. 1958); *United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc.*, 191 F.Supp. 383 (D.Del.1961); *Jamison v. Pennsylvania Salt Mfg. Co.*, 22 F.R.D. 238 (W.D.Pa.1958); *Bunny Bear, Inc. v. Dennis Mitchell Industries*, 139 F.Supp. 542 (E.D.Pa.1956); *Levy v. Equitable Life Assur. Society*, 18 F.R.D. 164 (E.D.Pa.1955).

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 *Moore's Federal Practice* 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.

1987 Amendment

The amendments are technical. No substantive change is intended.

2007 Amendments

The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 56(a) and (b) referred to summary-judgment motions on or against a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment. The list was incomplete. Rule 56 applies to third-party claimants, intervenors, claimants in interpleader, and others. Amended Rule 56(a) and (b) carry forward the present meaning by referring to a party claiming relief and a party against whom relief is sought.

Former Rule 56(c), (d), and (e) stated circumstances in which summary judgment "shall be rendered," the court "shall if practicable" ascertain facts existing without substantial controversy, and "if appropriate, shall" enter summary judgment. In each place "shall" is changed to "should." It is established that although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact. _Kennedy v. Silas Mason Co._, 334 U.S. 249, 256-257 (1948). Many lower court decisions are gathered in 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, § 2728. "Should" in amended Rule 56(c) recognizes that courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact. Similarly sparing exercise of this discretion is appropriate under Rule 56(e)(2). Rule 56(d)(1), on the other hand, reflects the more open-ended discretion to decide whether it is practicable to determine what material facts are not genuinely at issue.

Former Rule 56(d) used a variety of different phrases to express the Rule 56(c) standard for summary judgment--that there is no genuine issue as to any material fact. Amended Rule 56(d) adopts terms directly parallel to Rule 56(c).

2009 Amendments

The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in new subdivision (c)(1). The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action. If the motion seems premature both subdivision (c)(1) and Rule 6(b) allow the court to extend the time to respond. The rule does set a presumptive deadline at 30 days after the close of all discovery.

The presumptive timing rules are default provisions that may be altered by an order in the case or by local rule. Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines. Scheduling orders tailored to the needs of the specific case, perhaps adjusted as it progresses, are likely to work better than default rules. A scheduling order may be adjusted to adopt the parties' agreement on timing, or may require that discovery and motions occur in stages--including separation of expert-witness discovery from other discovery.

Local rules may prove useful when local docket conditions or practices are incompatible with the general Rule 56 timing provisions.

If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due.

2010 Amendments

Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Subdivision (a). Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word--genuine "issue" becomes genuine "dispute." "Dispute" better reflects the focus of a summary-judgment determination. As explained below, "shall" also is restored to the

5

place it held from 1938 to 2007.

The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase "partial summary judgment" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion.

"Shall" is restored to express the direction to grant summary judgment. The word "shall" in Rule 56 acquired significance over many decades of use. Rule 56 was amended in 2007 to replace "shall" with "should" as part of the Style Project, acting under a convention that prohibited any use of "shall." Comments on proposals to amend Rule 56, as published in 2008, have shown that neither of the choices available under the Style Project conventions--"must" or "should"--is suitable in light of the case law on whether a district court has discretion to deny summary judgment when there appears to be no genuine dispute as to any material fact. Compare *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case in which there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 * * * (1948)"), with *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Eliminating "shall" created an unacceptable risk of changing the summary-judgment standard. Restoring "shall" avoids the unintended consequences of any other word.

Subdivision (a) also adds a new direction that the court should state on the record the reasons for granting or denying the motion. Most courts recognize this practice. Among other advantages, a statement of reasons can facilitate an appeal or subsequent trial-court proceedings. It is particularly important to state the reasons for granting summary judgment. The form and detail of the statement of reasons are left to the court's discretion.

The statement on denying summary judgment need not address every available reason. But identification of central issues may help the parties to focus further proceedings.

Subdivision (b). The timing provisions in former subdivisions (a) and (c) are superseded. Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.

Subdivision (c). Subdivision (c) is new. It establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules.

Subdivision (c)(1) addresses the ways to support an assertion that a fact can or cannot be genuinely disputed. It does not address the form for providing the required support. Different courts and judges have adopted different forms including, for example, directions that the support be included in the motion, made part of a separate statement of facts, interpolated in the body of a brief or memorandum, or provided in a separate statement of facts included in a brief or memorandum.

Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record--including materials referred to in an affidavit or declaration--must be placed in the record. Once materials are in the record, the court may, by order in the case, direct that the materials be gathered in an appendix, a party may voluntarily submit an appendix, or the parties may submit a joint appendix. The

6

appendix procedure also may be established by local rule. Pointing to a specific location in an appendix satisfies the citation requirement. So too it may be convenient to direct that a party assist the court in locating materials buried in a voluminous record.

Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record. Nonetheless, the rule also recognizes that a court may consider record materials not called to its attention by the parties.

Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). Other provisions are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.

A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.

**Subdivision (d).** Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).

A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion.

**Subdivision (e).** Subdivision (e) addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c). As explained below, summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

Subdivision (e)(2) authorizes the court to consider a fact as undisputed for purposes of the motion when response or reply requirements are not satisfied. This approach reflects the "deemed admitted" provisions in many local rules. The fact is considered undisputed only for purposes of the motion; if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further proceedings. And the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute.

Subdivision (e)(3) recognizes that the court may grant summary judgment only if the motion and supporting materials--including the facts considered undisputed under subdivision (e)(2)--show that the

movant is entitled to it. Considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed. Once the court has determined the set of facts-- both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply--it must determine the legal consequences of these facts and permissible inferences from them.

Subdivision (e)(4) recognizes that still other orders may be appropriate. The choice among possible orders should be designed to encourage proper presentation of the record. Many courts take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed. And the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant.

**Subdivision (f).** Subdivision (f) brings into Rule 56 text a number of related procedures that have grown up in practice. After giving notice and a reasonable time to respond the court may grant summary judgment for the nonmoving party; grant a motion on legal or factual grounds not raised by the parties; or consider summary judgment on its own. In many cases it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c).

**Subdivision (g).** Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

**Subdivision (h).** Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. *See* Cecil & Cort, Federal Judicial Center Memorandum on Federal Rule of Civil Procedure 56(g) Motions for Sanctions (April 2, 2007). In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.

CROSS REFERENCES

Dismissal of action prior to service of motion for summary judgment, see Fed.Rules Civ.Proc. Rule 41, 28 USCA.
Findings of fact and conclusions of law unnecessary, see Fed.Rules Civ.Proc. Rule 52, 28 USCA.
Injunctions, single judge not to enter summary judgment, see 28 USCA § 2284.
Jurisdiction for lawsuits against terrorist states and bar on motions to dismiss, see 28 USCA § 1605.
Motion for judgment on pleadings, see Fed.Rules Civ.Proc. Rule 12, 28 USCA.

application (1) the clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment.

[Source: Former Local Civil Rule 10]

## Local Civil Rule 56.1. Statements of Material Facts on Motion for Summary Judgment

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, *in numbered paragraphs*, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

(b) The papers opposing a motion for summary judgment shall include *a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing* a separate, short and concise statement of *additional* material facts as to which it is contended that there exists a genuine issue to be tried.

(c) *Each numbered paragraph in the statement of* material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *for purposes of the motion* unless *specifically* controverted by *a correspondingly numbered paragraph in* the statement required to be served by the opposing party.

(d) Each statement *by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact,* must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

[Adopted March 25, 2004]